No. 14-2363

# In the United States Court of Appeals for the Fourth Circuit

**THE NATIONAL ORGANIZATION FOR MARRIAGE, INC.**,

Appellant,

v.

**UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE**,

Appellee,

Appeal from the United States District Court
for the Eastern District of Virginia, Alexandria Division

## BRIEF OF APPELLANT

William E. Davis, of counsel
(D.C. 280057)
Kaylan L. Phillips (D.C. 1110583)
Noel H. Johnson (Wisc. 1068004)
Joseph A. Vanderhulst (Ind. 28106-02)
ACTRIGHT LEGAL FOUNDATION
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
wdavis@foley.com
kphillips@actrightlegal.org
njohnson@actrightlegal.org
jvanderhulst@actrightlegal.org

John C. Eastman (Cal. 193726)
CENTER FOR CONSTITUTIONAL
  JURISPRUDENCE
c/o Chapman Univ. School of Law
One University Drive
Orange, CA 92866
(877) 855-3330 x2 (telephone)
(714) 844-4817 (fax)
jeastman@chapman.edu

*Counsel for Appellant*
*(additional counsel listed inside cover)*

*Additional Counsel:*

Jason Torchinsky (Va. 47481)
Shawn Toomey Sheehy (Va. 82630)
Hᴏʟᴛᴢᴍᴀɴ Vᴏɢᴇʟ Jᴏsᴇғɪᴀᴋ, PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
(540) 341-8808 (telephone)
(540) 341-8809 (fax)
jtorchinsky@hvjlaw.com
ssheehy@hvjlaw.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.   14-2363      Caption:  The National Organization for Marriage, Inc. v. United States, IRS

Pursuant to FRAP 26.1 and Local Rule 26.1,

The National Organization for Marriage, Inc.
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.     Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
       If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: Kaylan L. Phillips                  Date: _____3/4/2015_____

Counsel for: Appellant_____

# CERTIFICATE OF SERVICE
**************************

I certify that on _____3/4/2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Kaylan L. Phillips_____            _____3/4/2015_____
(signature)                                         (date)

- 2 -

# Table of Contents

Table of Contents - Addendum ........................................................... iii

Table of Authorities ........................................................................ iv

Jurisdictional Statement .................................................................. 1

Statement of Issues Presented for Review .......................................... 1

Statement of the Case ..................................................................... 1

Summary of the Argument ............................................................... 6

Argument ...................................................................................... 9

    Standard of Review ................................................................... 9

   I.  The District Court Abused Its Discretion in Determining that NOM
       Was Not a Prevailing Party ...................................................... 10

     A.  NOM Substantially Prevailed with Respect to the Most
         Significant Issue or Set of Issues Presented ............................ 10

        1.  The District Court Abused Its Discretion in Characterizing the
           Purpose of the Case ....................................................... 12

        2.  The District Court Abused Its Discretion in Failing to Consider
           NOM's Request for Actual Damages ................................. 14

     B.  NOM Substantially Prevailed with Respect to the Amount in
         Controversy ..................................................................... 16

        1.  The District Court Abused Its Discretion by Including a
           Voluntarily-Withdrawn Claim for Damages in the "Amount in
           Controversy" ................................................................. 17

        2.  The District Court Abused Its Discretion in Its Speculative
           Calculation of the Punitive Damages at Issue ..................... 18

i

3.  The District Court Abused Its Discretion in Finding NOM's Award Insubstantial ...........................................................21

II. The District Court Abused Its Discretion in Determining that the Government's Position Was Substantially Justified .....................................24

A. The District Court Abused Its Discretion by Failing to Consider the Government's Position on Actual Damages .....................................27

B. The District Court Abused Its Discretion in Finding the Government's Position Substantially Justified .......................................28

Conclusion .....................................................................................................35

Statement with Respect to Oral Argument ...............................................37

Certificate of Compliance .........................................................................38

Certificate of Service ...............................................................................39

Addendum

## Table of Contents - Addendum

26 U.S.C § 7430(c)(4)(A)-(D) ................................................................1

26 U.S.C § 7431(c) .............................................................................2

# Table of Authorities

## *Cases*

*Bowles v. United States*, 947 F.2d 91 (4th Cir. 1991) ...............................9

*Cassuto v. Comm'r*, 936 F.2d 736 (2d Cir. 1991) ...................................11

*Christian Coal. Int'l v. United States*, 133 F. Supp. 2d 437
    (E.D. Va. 2001)............................................................... 10-11, 14

*Don Johnson Motors, Inc. v. United States*, No. B-06-047,
    2008 U.S. Dist. LEXIS 36594 (S.D. Tex. Mar. 14, 2008) .......... 11, 17, 21-22

*Envtl. Def. Fund, Inc. v. Watt*, 722 F.2d 1081 (2d Cir. 1983) .................................34

*Estate of Baird v. Comm'r*, 416 F.3d 442 (5th Cir. 2005)..................................27, 29

*Estate of Johnson v. United States*, No. 11-10148-RWZ, 2013 U.S. Dist.
    LEXIS 150120 (D. Mass. Oct. 18, 2013) .....................................21

*Farrar v. Hobby*, 113 S. Ct. 566 (1992) ...................................................22

*Goettee v. Comm'r*, 192 Fed. Appx. 212 (4th Cir. 2006)..................................19, 21

*Gunnells v. Healthplan Servs.*, 348 F.3d 417 (4th Cir. 2003) .................................26

*Hanson v. Comm'r*, 975 F.2d 1150 (5th Cir. 1992)....................................34

*Heasley v. Comm'r*, 967 F.2d 116 (5th Cir. 1992) ...........................................10, 16

*Huckaby v. U.S. Dep't of Treasury*, 804 F.2d 297 (5th Cir. 1986)................... 10-11

*Jones v. United States*, 9 F. Supp. 2d 1119 (D. Neb. 1998) ....................... 26, 33-34

*Jones v. United States*, 9 F. Supp. 2d 1154 (D. Neb. 1998) ..............................23, 27

*Jones v. United States*, 207 F.3d 508 (8th Cir. 2000)......................................27

*Keeter v. United States*, No. S-96-1755, 1998 U.S. Dist. LEXIS 12457
    (E.D. Cal. Aug. 3, 1998)..........................................................23

*Kenagy v. United States*, 942 F.2d 459 (8th Cir. 1991)..........................................27

*Mallas v. United States*, 876 F. Supp. 86 (M.D.N.C. 1994) ........................ 21-22, 33

*Marre v. United States*, 117 F.3d 297 (5th Cir. 1997) ................................................9

*Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) ........................................................28

*Pierce v. Underwood*, 487 U.S. 552 (1988) .............................................9, 24, 32, 35

*Ragan v. Comm'n*, 135 F.3d 329 (5th Cir. 1998) .....................................................14

*Ralston Dev. Corp. v. United States*, 937 F.2d 510 (10th Cir. 1991) ......................22

*Reynoso v. United States*, No. 10-00098, 2011 U.S. Dist. LEXIS 87929
    (N.D. Cal. Aug. 9, 2011) ......................................................................................22

*Snider v. United States*, 468 F.3d 500 (8th Cir. 2006) .............................................33

*Smith v. United States*, No. 3:09cv228 (JBA), 2011 U.S. Dist. LEXIS
    22316 (D. Conn. Mar. 7, 2011) ...........................................................................27

*Smith v. United States*, 735 F. Supp. 1396 (C.D. Ill. 1990) .....................................22

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) .........................20

*Texas Food Indus. Ass'n v. United States Dept. of Agric.*, 81 F.3d 578
    (5th Cir. 1996) ........................................................................................................9

*United States v. 515 Granby, LLC*, 736 F.3d 309 (4th Cir. 2013) ...........................24

*United States v. Delfino*, 510 F.3d 468 (4th Cir. 2007) ..............................................9

*United States v. Paisley*, 957 F.2d 1161 (4th Cir. 1992) .................................*passim*

*United States v. Wilson*, 624 F.3d 640 (4th Cir. 2010) .........................................9, 28

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ...............26

*Wilfong v. United States*, 991 F.2d 359 (7th Cir. 1993) ..........................................25

*Wilkerson v. United States*, 67 F.3d 112 (5th Cir. 1995) ....................................11, 16

*Statutes*

26 U.S.C. § 6033 ................................................................................. 2

26 U.S.C. § 6103 ............................................................................. 2-3, 5

26 U.S.C. § 6104(b) ........................................................................... 2

26 U.S.C. § 7213(a) ........................................................................... 2

26 U.S.C § 7430 ........................................................................ *passim*

26 U.S.C § 7431 ........................................................................ *passim*

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 2412 .............................................................................. 10

*Other Authorities*

Goldfarb and Tumulty, Washington Post, *IRS admits targeting
      conservatives for tax scrutiny in 2012 election*, May 10, 2013 ......................4

vi

## Jurisdictional Statement

The district court had jurisdiction based on 26 U.S.C § 7431. This is an appeal of a final judgment entered by the district court on October 16, 2014, which denied in its entirety Appellant's motion for attorneys' fees pursuant to 26 U.S.C § 7431(c)(3). (Joint Appendix ("JA") at 383.) Appellant timely appealed the judgment on December 15, 2014. (JA at 384.) This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## Statement of the Issues Presented for Review

1.   Whether the district court abused its discretion in determining that Appellant National Organization for Marriage was not a prevailing party because it did not substantially prevail as to:

    a.    The amount in controversy, and/or
    b.    The most significant issue or set of issues.

2.   Whether the district court abused its discretion in determining that the position of Appellee United States of America, Internal Revenue Service was substantially justified in the proceeding.

## Statement of the Case

This case arises from a nonprofit group's extended pursuit of the truth behind the shocking and unprecedented release of its confidential tax return to a political opponent.

The National Organization for Marriage ("NOM"), a nonprofit organization founded in 2007 to protect marriage and the faith communities that sustain it across the United States, (JA at 11 ¶ 8), must file a Form 990 annually with the Internal

1

Revenue Service ("IRS"), *see* 26 U.S.C. § 6033. Schedule B to Form 990 ("Schedule B") lists the names and addresses of donors who have contributed $5,000 or more during the relevant reporting period.

It is self-evident that the anonymity of a nonprofit organization's donors is sacrosanct. Congress certainly believed that was the case when it deemed the names and addresses of donors on the otherwise-public Schedule B as "confidential," 26 U.S.C. §§ 6103 and 6104(b), and attached severe criminal penalties to any willful disclosure of such information, *id*. § 7213(a). Congress even provided taxpayers a civil cause of action against the United States for the knowing or negligent unauthorized inspection or disclosure of tax return information. 26 U.S.C. § 7431. For each negligent disclosure or inspection, a plaintiff may recover statutory damages of $1,000 or, alternatively, actual damages. 26 U.S.C. §§ 7431(c)(1)(A)-(B)(i). If the inspection or disclosure is willful or grossly negligent, a plaintiff may be entitled to punitive damages in addition to actual damages. 26 U.S.C. § 7431(c)(1)(B)(ii).

In March of 2012, NOM was stunned to discover its unredacted 2008 amended Schedule B on the websites of the Human Rights Campaign ("HRC") and the Huffington Post. (JA at 12 ¶¶ 14-16.) HRC advocates nationwide for redefining "marriage" to include same-sex couples, a mission in direct political opposition to NOM's. (JA at 22 ¶ 73.) NOM's forensic evaluation of the posted documents

revealed markings on each page that NOM had not seen before; markings that indicated that the document originated from within the IRS. (JA at 13 ¶ 23.)

NOM quickly took action. It demanded that HRC and Huffington Post take the document down. HRC complied. The Huffington Post did not. NOM urged the Treasury Inspector General for Tax Administration ("TIGTA") to investigate the unauthorized disclosure, which it did. (JA at 17-18 ¶¶ 46-52.) Despite the fact that NOM requested and completely cooperated with the investigation, TIGTA did not share any results or conclusions of its investigation with NOM. (JA at 18 ¶ 52.) Because it needed to know the cause of the disclosure in order to remedy its injury and prevent future disclosures, NOM was forced to undertake significant and costly efforts to obtain information about the illegal disclosure of its donor information—including filing and administratively appealing five Freedom of Information Act ("FOIA") requests and one Privacy Act Request. Yet, in response to those requests, TIGTA and the IRS consistently withheld completely or redacted all information materially relevant to TIGTA's Investigation, including whether the document originated from within the IRS. (JA at 18 ¶¶ 53-55.) According to TIGTA, 26 U.S.C. § 6103 prohibited it from disclosing to NOM even *the existence* of an investigation, let alone any information about the investigation. (JA at 20 ¶ 63.)

NOM turned to its Congressional representatives for assistance with

uncovering the truth. Yet even as details of the IRS's improper treatment of conservative organizations were coming to light,[1] NOM was unable to receive any information as to the disclosure of its confidential information. (JA at 21 ¶¶ 67-68.)

On October 3, 2013, after significant and costly efforts to find the truth outside of the courtroom, NOM filed suit against the United States of America, Internal Revenue Service (hereafter, the "Government"), seeking damages pursuant to 26 U.S.C. § 7431 for the unlawful inspections and disclosures of NOM's tax return and tax return information by agents of the IRS in violation of 26 U.S.C. § 6103.

In its Verified Complaint, NOM initially sought $1,000 in statutory damages for each act of unlawful inspection or disclosure, or actual damages stemming from related legal costs and lost donations in an amount not less than $60,500, plus punitive damages for any intentional or grossly negligent acts of disclosure or inspection. *See* 26 U.S.C. § 7431(c). (JA at 30-31.) Early in the litigation, NOM made the decision to revise its claim for actual damages. NOM dropped its claim for damages related to lost donors and asserted its claims for expenses, costs, and fees resulting from efforts to prevent further disclosure of its unredacted 2008

---

[1]     *See* Goldfarb and Tumulty, Washington Post, *IRS admits targeting conservatives for tax scrutiny in 2012 election*, May 10, 2013, http://www.washingtonpost.com/business/economy/irs-admits-targeting-conservatives-for-tax-scrutiny-in-2012-election/2013/05/10/3b6a0ada-b987-11e2-92f3-f291801936b8_story.html

Schedule B. After taking into account additional legal expenses resulting from the disclosure, NOM revised its actual damages to $58,586.37.

Not until October 30, 2013—19 months after the unauthorized disclosure—did NOM learn the identity of the individual to whom its tax information was disclosed. And, still, not from the Executive Branch. As part of its investigation into the targeting of conservative applicants for tax-exempt status (JA at 26 ¶¶ 88-90), the House Ways and Means Committee revealed that the IRS disclosed the document to Matthew Meisel, a former employee of Bain & Company, the company where former Republican Presidential Candidate Mitt Romney (who was associated with one of the disclosed NOM donors) served as interim CEO in the early 1990s, (JA at 215 (referencing National Review Online article)). The House Committee also revealed that Mr. Meisel provided NOM's unredacted 2008 Schedule B to HRC. (*Id.*)

On December 2, 2013, the Government filed its Answer. (JA at 37-58.) The Government admitted that it disclosed NOM's unredacted 2008 Schedule B to a third party in violation of 26 U.S.C. § 6103, but denied that it was the cause of *any* of NOM's actual damages, conceding liability for only the bare minimum $1,000 statutory damage amount. (JA at 49-50 ¶ 78.) This was the first time that the Government even acknowledged that the document came from within the IRS.

Following the close of discovery, the Government moved for summary

judgment on all counts (Docket Entry 67), which NOM opposed, (Docket Entry 73).

On June 3, 2014, the district court granted the Government's Motion for Summary Judgment as to NOM's unlawful inspection claim, and its request for punitive damages. (JA at 350.) The Government's Motion was denied in all other respects, including the Government's argument that NOM was not entitled to any actual damages. (*Id*.)

On June 18, 2014, the parties filed the Joint Motion for Entry of Consent Judgment (JA at 351-53), pursuant to which the parties agreed that NOM would obtain a judgment against the Government in the amount of $50,000, inclusive of NOM's claims for actual damages under 26 U.S.C. § 7431(c)(1)(B)(i) and its claims for costs of the action under 26 U.S.C. § 7431(c)(2) (Docket Entry 86-1).

On June 24, 2014, this Court approved the Consent Judgment and retained jurisdiction for purposes of resolving the matter of attorneys' fees. (JA at 354.) On July 25, 2014, NOM filed a motion for attorneys' fees. The Government filed its opposition on August 8, 2014, and NOM replied on August 15, 2014. The district court denied NOM's motion in its entirety on October 16, 2014. (JA at 383.) NOM timely appealed on December 15, 2014. (JA at 384.)

## Summary of the Argument

Despite NOM's myriad efforts to obtain the information from the

6

Government, it took a federal lawsuit to receive the results of the Government's investigation into the unauthorized disclosure of its own return information. And not only did NOM receive those results, it received an award of $50,000 for the damages caused by the Government's disclosure. Yet, the district court determined that NOM was not entitled to *any* attorneys' fees despite its substantial recovery because NOM was not a "prevailing party" and the Government's position was substantially justified. (JA at 370-82.)

Pursuant to Section 7431, a victim of unauthorized inspection or disclosure "shall" recover "reasonable attorneys fees" against the United States "if the plaintiff is the prevailing party (as determined under section 7430(c)(4))." 26 U.S.C § 7431(c)(3). A "prevailing party" is one that "substantially prevailed with respect to the amount in controversy" or "substantially prevailed with respect to the most significant issue or set of issues presented." 26 U.S.C. § 7430(c)(4)(A)(i)(I) and (II). There is an exception, however, "if the United States establishes that the position of the United States in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B)(i).

Regarding the prevailing party status, the district court abused its discretion in two ways. First, the district court erroneously limited the legal issues to only the Government's liability for punitive damages. The district court did not address the impetus for the lawsuit—the existence of the Government's liability and the

7

identity of the person who disclosed NOM's confidential donor data—as well as the Government's liability for actual damages, when assessing the most significant issues in the case. Second, when calculating the amount in controversy, the district court abused its discretion by including actual damages that NOM voluntarily dropped from the suit, nearly doubling the total actual damages and, subsequently, nearly doubling the speculative punitive damages.

Further, the district court abused its discretion in finding that, even if NOM substantially prevailed with respect to the most significant issue or to the amount in controversy, it was not a prevailing party because the Government's position in the proceeding was substantially justified. The district court's analysis here focused entirely on whether the Government was justified in defending NOM's claims for punitive damages and failed to examine whether the Government's position on actual damages was justified. That failure was an error of law. The Government was not substantially justified in completely disavowing liability for NOM's actual damages resulting from the admitted unauthorized disclosure.

Because NOM substantially prevailed as to the amount in controversy and as to the most significant issues presented and because the Government cannot show that its position that it was not the cause of *any* of NOM's actual damages was substantially justified, NOM is entitled to reasonable attorneys' fees.

8

## Argument

## Standard of Review

This Court reviews cases awarding or denying attorneys' fees under section 7430 for an abuse of discretion. *See Bowles v. United States*, 947 F.2d 91, 94 (4th Cir. 1991). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Wilson*, 624 F.3d 640, 649 (4th Cir. 2010) (*citing United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007)). Although this is a deferential standard, the Supreme Court "obviously contemplate[s] a degree of deference considerably short of a simple, accept-on-faith, rubber-stamping of district court decisions on this issue." *United States v. Paisley*, 957 F.2d 1161, 1166 (4th Cir. 1992) (describing Supreme Court's standard in *Pierce v. Underwood*, 487 U.S. 552 (1988) as a "careful, detailed review"). This Circuit explains that "it is inescapable that honest, principled review under the traditional deferential standards may yet require considerable appellate court effort" that requires "a substantial canvassing of the relevant materials[.]" *Paisley*, 957 F.2d at 1166 n.3. Further, "[r]eview of the conclusions of law underlying an award or denial of attorneys' fees is *de novo*." *Marre v. United States*, 117 F.3d 297, 301 (5th Cir. 1997) (*citing Texas Food Indus. Ass'n v. United States Dept. of Agric.*, 81 F.3d 578, 580 (5th Cir. 1996)).

9

## I.    The District Court Abused Its Discretion in Determining that NOM Was Not a Prevailing Party.

A "prevailing party" for purposes of section 7431 is one that (1) "has substantially prevailed with respect to the amount in controversy"; or (2) "has substantially prevailed with respect to the most significant issue or set of issues presented." 26 U.S.C. § 7430(c)(4)(A)(i)(I)-(II); *see also Christian Coal. Int'l v. United States*, 133 F. Supp. 2d 437, 438 (E.D. Va. 2001).[2]

NOM need only satisfy one requirement to prevail, and it satisfies both. In rendering its determination, the district court concluded that NOM did not satisfy either requirement. (JA at 371.) In doing so, it improperly calculated the amount in controversy and failed to address a significant issue, namely, the causation of actual damages.

### A.    NOM Substantially Prevailed with Respect to the Most Significant Issue or Set of Issues Presented.

The substantially prevailed requirement "'is phrased in terms of issues not claims.'" *Heasley v. Comm'r*, 967 F.2d 116, 122 (5th Cir. 1992) (*quoting Huckaby*

---

[2]    There is an additional requirement under Section 7430 that the party must meet the requirements of 28 U.S.C. § 2412(d)(2)(B), which, in part, limits attorneys' fees awards to incorporated entities that have fewer than 500 employees and a net worth of $7 million or less at the time the civil action was filed. As the district court found, (JA at 369 n.2), it is uncontested that NOM meets these requirements and, therefore, this brief will focus on the "substantially prevailed" requirement.

*v. U.S. Dep't of Treasury*, 804 F.2d 297, 300 (5th Cir. 1986)). Obtaining a "victory on the primary issue will suffice, and neither the amount of damages received nor number of claims won is determinative." *Wilkerson v. United States*, 67 F.3d 112, 120 (5th Cir. 1995). Importantly for the present case, "[t]he term 'substantially prevailed' . . . can be reasonably interpreted to refer to the final outcome of the case—whether by court judgment or settlement." *Cassuto v. Comm'r*, 936 F.2d 736, 741 (2d Cir. 1991).

As the district court properly stated, the Complaint is "[t]he starting point for identifying the issues presented for litigation." (JA at 378 (*quoting Christian Coal. Int'l*, 133 F. Supp. 2d at 439).) "An issue is the most significant if, despite involving a lesser dollar amount than other issues, the issue objectively represents the most significant issue for the taxpayer or the IRS." *Don Johnson Motors, Inc. v. United States*, No. B-06-047, 2008 U.S. Dist. LEXIS 36594, *13 (S.D. Tex. Mar. 14, 2008).

Rejecting NOM's statement of the most significant issue, the district court found that "this case was not brought to determine 'whether the IRS unlawfully disclosed NOM's 2008 Form 990 Schedule B.'" (JA at 379.)[3] But this conclusion is contrary to the face of the Complaint—which sought to have the Government

---

[3]   The district court did not clearly articulate what it believes the most significant issue is, but it is clear it believes it to be related to NOM's arguments concerning gross negligence and willfulness.

declared liable for the unlawful release and made to pay damages. Both of which occurred *only* as a result of NOM filing its complaint.[4]

In finding that NOM did not substantially prevail on the most significant issue or set of issues, the district court abused its discretion by (1) misapprehending the underlying case and (2) by failing to consider NOM's claims for actual damages.

### 1.    The District Court Abused Its Discretion in Characterizing the Purpose of the Case.

As NOM's Verified Complaint makes clear, the primary and most significant issues in this case were (1) whether the IRS violated NOM's rights by unlawfully disclosing NOM's unredacted 2008 Schedule B and (2) whether this disclosure caused "appreciable harm to NOM." (JA at 10 ¶ 2; *see also* JA at 12-15 ¶¶ 14-36 (outlining the factual basis for the complaint).)

Yet, focusing on the use of the word "gross" in an introductory paragraph of the Complaint, the district court characterized the purpose of the lawsuit as exclusively pertaining to NOM's theories of willfulness and gross negligence. (JA

---

[4]    The district court's logic appears to make the most significant issue dependent upon the speed of success. For example, according to the district court, because the Government acknowledged responsibility for the disclosure in its Answer, the issue of liability must not be as significant as the issue of damages, which the parties disputed for six additional months. But this logic puts a plaintiff in the position of either forgoing resolution of other claims or forgoing attorneys' fees. Neither result is in the interest of justice.

at 379 (citing Compl. ¶ 2).) To be sure, based on the information available to it, including the fact that the Schedule B was first published by its political opponent during a key election year, NOM reasonably believed that the disclosure of its donor list was likely intentional or the result of gross negligence. (*See* JA at 10 ¶ 2.) But the inclusion of those theories in the Complaint does not change the fact that this lawsuit was pursued primarily to establish that the IRS was responsible for the disclosure and subsequent publication of NOM's confidential donor list and to recover damages related to its efforts to remedy the disclosure.

To cast this case as solely relating to willful or grossly negligent disclosure ignores the twenty-seven paragraphs of the Complaint that discuss NOM's expensive and extensive efforts over nearly *two years* to simply determine whether the IRS made the disclosure, and who at the IRS was responsible for it (JA at 17-22 ¶¶ 45-71), as well as the eight paragraphs discussing the actual damages sustained as a result of the disclosure, (JA at 14-15 ¶¶ 29-36). NOM's actual damages remained the same regardless of whether the disclosure was the result of negligence, gross negligence, or willfulness.

Before and immediately after NOM filed the underlying action, the Government stood between NOM and the truth by refusing to provide NOM with any relevant details concerning TIGTA's investigation of the disclosure. The Government even admits this fact. (*See* JA at 46 ¶ 55 ("The United States admits

13

that TIGTA responded to Plaintiff's FOIA requests and has not produced records regarding the underlying conclusions or specifics of its investigation.").) Not until NOM filed the underlying action did the Government confirm that it "disclosed one copy of Plaintiff's 2008 Form 990 unredacted Schedule B to a single third party" in violation of law. (JA at 49-50 ¶ 78.)

The district court found that "[t]his case presented many significant issues, separate and apart from the Government's admission as to the single inadvertent disclosure[,]" without articulating what those significant issues were. (JA at 378.) And while there may have been other issues present, the fact remains that the primary issues were assigning responsibility for the unauthorized disclosure and awarding damages.[5] Whether the Government released a nonprofit's confidential return information—and so is responsible for the resulting damage—are significant and important issues. And on those significant issues, NOM prevailed.

### 2. The District Court Abused Its Discretion in Failing to Consider NOM's Request for Actual Damages.

The district court's finding that "[t]he end result of this litigation is exactly

---

[5]      If the district court was concerned with the amount of time NOM spent on unsuccessful issues, the remedy is through adjustment of the fee award rather than disallowing fees altogether. For example, if the district court was not satisfied with the substantial reductions NOM already made, it "may consider each phase or issue of the litigation discretely to determine whether the Plaintiff is entitled to recover expenses incurred in pursuing that issue or litigating that phase." *Christian Coal. Int'l*, 133 F. Supp. 2d at 438-439 (*citing Ragan v. Comm'n*, 135 F.3d 329 (5th Cir. 1998)).

14

what NOM already knew as early as December 2013, if not prior…," (JA at 379), further demonstrates that the court misunderstood the purpose of this case. In so doing, the court simultaneously minimized the significance of NOM's victory and gave excessive weight to the Government's Answer.

Contrary to the district court's implication, NOM did not discover all it needed to know about the disclosure via the Government's Answer. When cornered by NOM's Complaint, the Government finally did "admit" that it "disclosed one copy of Plaintiff's 2008 Form 990 unredacted Schedule B to a single third party" in violation of law, (JA at 49-50 ¶ 78), but it did no more. It did not provide NOM any details of the disclosure or assurances against future harm. And, as will be described more thoroughly in the section on whether the Government's position was substantially justified, the Government *denied* responsibility for *any* of NOM's actual damages in its Answer. (*See* JA at 55 ¶ 123 ("The United States denies that it owes Plaintiff actual damages for an IRS employee's single inadvertent disclosure of Plaintiff's 2008 Form 990 unredacted Schedule B.").)

Only in response to discovery requests during the pendency of this case did the Government reveal any details concerning the results of TIGTA's investigation. And at *no* time prior to settlement did the Government acknowledge any liability for NOM's actual damages. In fact, the Government specifically

15

denied liability and served intrusive and irrelevant discovery requests seeking information and documents pertaining to NOM's fundraising efforts in order to support its defense against responsibility for *any* actual damages. NOM substantially prevailed on the issue of whether the IRS's unlawful disclosure was the cause of its actual damages. (*See* JA at 352 ¶ 3 (explaining that settlement agreement resolves issue of actual damages caused by unlawful disclosure of 2008 Schedule B).) NOM's victory "on the primary issue" of liability for the disclosure and a significant, related issue of responsibility for actual damages, both of which were not settled in the Government's Answer, establishes that NOM "substantially prevailed" for purposes of attorneys' fees. *See*, *e.g.*, *Heasley*, 967 F.2d at 122; *Wilkerson*, 67 F.3d at 120.

**B.    NOM Substantially Prevailed with Respect to the Amount in Controversy.**

In addition to abusing its discretion on its determination of whether NOM prevailed as to the most significant issue, the district court abused its discretion in finding that NOM did not prevail with respect to the amount in controversy for two reasons. First, the court erred in its calculation of the amount in controversy by including the claim for lost donations that NOM voluntarily withdrew early in the litigation for reasons unrelated to its merits. In so doing, the district court penalized NOM for protecting its donors, nearly doubled the amount of actual damages in controversy, and, as a result, nearly doubled the unspecified punitive damages in

16

controversy. Second, the district court abused its discretion by including unspecified punitive damages in its calculation.

> **1.      The District Court Abused Its Discretion by Including a Voluntarily Withdrawn Claim for Damages in the "Amount in Controversy."**

As articulated by the district court, "'[t]he amount in controversy is any amount placed at issue by the pleadings increased by any amount subsequently placed at issue by any party.'" (JA at 373 (*citing Don Johnson Motors, Inc*., 2008 U.S. Dist. LEXIS 36594 at 7).) But that definition does not address the question presented by this case, that is, whether a claim for damages voluntarily withdrawn early in the litigation should be included in the "amount in controversy." This is a legal question and one that NOM believes has never been addressed by this Court. In fact, NOM is unaware of a case in any circuit where a voluntarily withdrawn claim was included in the calculation of "amount in controversy" when determining prevailing party status.

Yet the district court found a general, out-of-circuit definition of "amount in controversy" to mean that *any* damages sought "at *any* point in the litigation," (JA at 373 (emphasis added)), must be included in the calculation, regardless of whether such damages remain in controversy. Therefore, according to the district court, the amount of actual damages in controversy was not $58,586.37 but was $108,586.37. (JA at 376.) Such a holding is flawed for two significant reasons.

17

First, the district court's determination is incongruous with the plain language of the statute. 26 U.S.C. § 7430(c)(4)(i)(I) (emphasis added). The Government was not obligated to defend against the lost donation claim and it was not presented to the district court for resolution on summary judgment. Rather, NOM's claim for lost donations was no longer in controversy when it was voluntarily withdrawn over a month before the close of discovery and nearly three months before the Government filed its motion for summary judgment. After the claim was withdrawn, the amount of actual damages litigated was *reduced* from the $60,500 articulated in the Complaint to $58,586.37. By *adding* the lost donation claim back in, the district court effectively treats that claim as one that the Government won.

Second, the district court's holding penalizes plaintiffs who, before or during discovery, attempt to narrow the scope of the dispute by withdrawing damages claims they no longer wish to pursue. Plaintiffs would be left with little choice but to pursue all damages claims to final resolution, lest they render themselves ineligible for attorneys' fees. Not only is this detrimental to judicial economy, it places plaintiffs in the untenable position of choosing between dropping meritorious claims for reasons unrelated to the litigation or paying their lawyers.

### 2.    The District Court Abused Its Discretion in Its Speculative Calculation of the Punitive Damages at Issue.

The amount of punitive damages was left unspecified in the Verified

Complaint. Yet the district court, citing no authority—persuasive or binding—found it "necessary" to speculate as to the amount of punitive damages NOM would have sought and then to include it in the amount in controversy for purposes of awarding attorneys' fees. (JA at 377.)[6] That calculation was erroneous for two reasons.

First, the district court claims that speculating on punitive damages is appropriate because "the Government was required to defend against this claim all the way through the disposition of summary judgment." (JA at 376.) But this position presupposes that had the claim for punitive damages been withdrawn, the litigation would have been concluded. That is not the case. Because of the Government's position on actual damages, it was required to litigate the case through the disposition of summary judgment, regardless of whether there was a punitive damages claim.[7]

Second, aside from avoiding speculation, including unspecified punitive damages here is contrary to the purpose of the punitive damages provision set forth

---

[6]    The district court did cite *Goettee v. Comm'r*, 192 Fed. Appx. 212, 222 (4th Cir. 2006), but it was for the first part of the sentence (the contention that the fee award statute is to be construed in the Government's favor) rather than the second part about punitive damages. Speculative punitive damages were not at issue in *Goettee*.

[7]    Section 7431 provides for statutory or actual and/or punitive damages. 26 U.S.C. § 7431. Not prevailing as to one does not foreclose prevailing on the other.

19

in the statute. Punitive damages "further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). Yet, the district court advances a precedent that could deter plaintiffs with seemingly meritorious punitive damages claims from seeking punitive damages in the first instance. As was the case with NOM, the victim of an unlawful disclosure or inspection may be unable to ascertain the full facts and circumstances of that disclosure or inspection prior to filing suit, due to no fault of his own. At the time NOM filed this case, it knew that its chief political enemy, HRC, had obtained, from a "whistleblower," NOM's unredacted 2008 Schedule B, which contained internal IRS markings. (JA at 12.) Though the Government knew for over a year prior to the filing of NOM's Complaint that the IRS had disclosed NOM's unredacted 2008 Schedule B to Matthew Meisel, apparently as a result of mere negligence, the Government withheld that information from NOM until after NOM filed this suit, despite NOM's repeated requests for such information through FOIA requests. (JA at 18-21 ¶¶ 53-67.) The facts available to NOM at the time it filed this case strongly supported NOM's belief that the disclosure was intentional or at least grossly negligent and thus justified NOM's request for punitive damages. Yet, NOM is now being penalized for presenting this non-frivolous argument.

20

### 3.   The District Court Abused Its Discretion in Finding NOM's Award Insubstantial.

Beyond improperly including withdrawn and speculative damages in the amount in controversy, the district court abused its discretion by not considering precedents where plaintiffs received various percentages of the amount in controversy and still were deemed prevailing parties.

Notably, "[t]he law does not clearly define what threshold a plaintiff must meet to substantially prevail on the amount in controversy." *Estate of Johnson v. United States*, No. 11-10148-RWZ, 2013 U.S. Dist. LEXIS 150120, *3 (D. Mass. Oct. 18, 2013). However, "neither the amount of damages received nor number of claims won is determinative" as to whether a party "substantially prevailed." *Wilkerson*, 67 F.3d at 120.

While "an insubstantial award is not dispositive," *Don Johnson Motors, Inc.*, 2008 U.S. Dist. LEXIS 36594, *10, courts have often assessed "whether [the] Plaintiff substantially prevailed on the amount in controversy by calculating the percentage of the amount in controversy the Plaintiff successfully received," *id*. at *13 n.6. In practice, courts have typically found that the plaintiff did not substantially prevail on the amount in controversy only where the award is "disproportionally low," *Mallas v. United States*, 876 F. Supp. 86, 89 (M.D.N.C. 1994). *See*, *e.g*., *Goettee v. Comm'r*, 192 Fed. Appx. 212, 222 (4th Cir. 2006) (plaintiff did not substantially prevail with regard to amount in controversy where

21

"not quite 5 percent" was recovered); *Ralston Dev. Corp. v. United States*, 937 F.2d 510, 515 (10th Cir. 1991) (same with regard to a 19 percent recovery); *Don Johnson Motors, Inc*., 2008 U.S. Dist. LEXIS 36594 at 10 (same with regard to a "three-percent recovery"); *Smith v. United States*, 735 F. Supp. 1396, 1400 (C.D. Ill. 1990) (same with regard to $1,000 recovery where $6 million in compensatory and punitive damages were sought, a recovery of .017%). Yet even in such cases, "an insubstantial award is not dispositive." *Don Johnson Motors, Inc*., 2008 U.S. Dist. LEXIS 36594 at *10 (*citing Farrar v. Hobby*, 113 S. Ct. 566, 578 (1992) (O'Connor, J., concurring)).

NOM's recovery in this case was not "disproportionally low." *Mallas*, 876 F. Supp. at 89. Though NOM's pleading initially sought $60,500 in actual damages, that amount was reduced to $58,586.37 for reasons unrelated to the merits of NOM's claims. NOM ultimately recovered $50,000 from the Government (JA at 354), which constitutes a recovery of approximately 85 percent of the pecuniary harm alleged to have been caused by the Government's unlawful conduct. This is a substantial recovery. *Reynoso v. United States*, No. 10-00098, 2011 U.S. Dist. LEXIS 87929, 8 (N.D. Cal. Aug. 9, 2011) ("Plaintiff thus recovered eighty-one percent of the amount in controversy in this action and has substantially prevailed under section 7430.").

Considering, for the sake of argument, the 1:1 punitive multiplier adopted by

22

the district court, where the total amount in controversy would be $117,172.74, NOM's recovery was almost 43 percent, still a substantial percentage of the total. *See Keeter v. United States*, No. S-96-1755, 1998 U.S. Dist. LEXIS 12457, 5 (E.D. Cal. Aug. 3, 1998) (fifty-five percent recovery deemed "substantial").

Even if one accepts the district court's calculation of potential punitive damages based on the original amount of actual damages sought plus the amount of additional damages added during the litigation and excluding the amount of actual damages dropped from the litigation, NOM's recovery was still 23 percent of what was "sought." (JA at 377.) That is exponentially larger than many of the "disproportionately low" recoveries held to be not substantial, *see supra* (.017, 3, and 5 percent recoveries not "substantial").

In fact, a 23 percent recovery is *more* than the recovery of the plaintiffs in *Jones v. United States*, 9 F. Supp. 2d 1154 (D. Neb. 1998). There, the plaintiffs received just over $5 million dollars, which was only about 15 percent of what was requested. *Id*. at 1157. Yet the court found that the recovery "surely satisfies the 'substantially prevailed' language of the statute." *Id*. at 1160.

The district court made an error of law in determining that NOM did not prevail as to the most significant issue or the amount in controversy. As such, NOM was improperly denied prevailing party status.

**II.    The District Court Abused Its Discretion in Determining that the Government's Position Was Substantially Justified.**

A plaintiff that substantially prevails as to the most significant issue or as to the amount in controversy is entitled to reasonable attorneys' fees unless the Government's position was substantially justified. The burden is on the Government to prove that its position was substantially justified. 26 U.S.C. § 7430(c)(4)(B)(i) ("A party shall not be treated as the prevailing party . . . if the United States establishes that the position of the United States in the proceeding was substantially justified"). The Government's position is substantially justified if it has a "reasonable basis both in law and fact." *Pierce*, 487 U.S. at 565. The Government's position must be "'more than merely undeserving of sanctions for frivolousness,'" *United States v. 515 Granby*, *LLC*, 736 F.3d 309, 315 (4th Cir. 2013) (*quoting Pierce*, 487 U.S. at 566); it must be "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. In determining whether the Government's position is substantially justified, "the court shall take into account whether the United States has lost in courts of appeal for other circuits on substantially similar issues." 26 U.S.C. § 7430(c)(4)(B)(iii).

Although the district court found that NOM did not substantially prevail as to the most significant issues or as to the amount in controversy, it also determined in the alternative that "NOM would still not be entitled to a fee award because the

24

Government's position was substantially justified." (JA at 380.)

In reviewing the district court's denial of a fee award, the analysis "begin[s] by examining the reasons supporting the district court's conclusion" regarding whether the government's position was substantially justified. *Wilfong v. United States*, 991 F.2d 359, 364 (7th Cir. 1993). Although the "merits decisions in a litigation … cannot, standing alone, determine the substantial justification issue," the underlying decisions—"and more critically their rationales—are the most powerful available indicators of the strength, hence reasonableness, of the ultimately rejected position." *Paisley*, 957 F.2d at 1167. Specifically, this Circuit instructs that the reviewing court should consider the "available 'objective indicia' of the strength of the Government's position" in order to determine whether the Government's position was substantially justified. *Id*. at 1166 (relying on standard articulated in *Pierce*). These "objective indicia" include "the terms of the settlement agreement that ended the underlying litigation"; the "the views of other courts on the strength, hence reasonableness, of the Government's position"; and, the "general indications of difficulty" faced by the lower court in reaching its decision in order to determine whether the Government's position was substantially justified. *Id*. at 1166-68.

The district court focused only on one matter: whether the Government "reasonably contested NOM's unfounded . . . allegations that would have

25

supported a claim for punitive damages if properly proven." (JA at 381.) The district court engaged in no analysis as to whether the Government was substantially justified in disavowing liability for *any* and *all* actual damages, an argument the lower court, and another district court, *Jones v. United States*, 9 F. Supp. 2d 1119 (D. Neb. 1998) (discussed below), faced little difficulty in rejecting, *Paisley*, 957 F.2d at 1167-68. The rejection of those arguments also forced the Government to settle the issue on unfavorable terms. Failure to conduct such an analysis in light of the claims and supporting record evidence constitutes an abuse of discretion. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) ("An abuse occurs when a court, in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them."); *see also Gunnells v. Healthplan Servs.*, 348 F.3d 417, 434 (4th Cir. 2003) (court abused its discretion if "it misunderstood or ignored controlling legal principles"). Based on the aforementioned "objective indicia," the Government's position was plainly unreasonable. Accordingly, this Court should reverse the district court and hold that the Government's position was not substantially justified. *See Paisley*, 957 F.2d at 1170 (conducting independent analysis of "substantial justification" issue after holding that district court abused its discretion).

26

### A.    The District Court Abused Its Discretion by Failing to Consider the Government's Position on Actual Damages.

Although the relevant position of the Government is the one taken "in the proceeding" 26 U.S.C. § 7430(c)(4)(B)(i), "the Court may consider 'the facts . . . available at the time the IRS took its position,' including pre-litigation actions . . . that may have informed [the Government's] conduct during the litigation." *Smith v. United States*, No. 3:09cv228 (JBA), 2011 U.S. Dist. LEXIS 22316, 10 n.1 (D. Conn. Mar. 7, 2011) (*quoting Estate of Baird v. Comm'r*, 416 F.3d 442, 447 (5th Cir. 2005)). Ultimately, "[w]hether the government's position is not substantially justified is necessarily a case-by-case, facts and circumstances determination." *Kenagy v. United States*, 942 F.2d 459, 464 (8th Cir. 1991).

Section 7431 plainly contemplates—as this case exemplifies—that a particular plaintiff will pursue multiple theories of liability and pursue multiple types of damages in a single action. In such a case, the Government will take multiple legal positions in its defense, as it did here. Whether the Government was "substantially justified" in a given action necessarily requires the court to assess the reasonableness of each of the Government's positions. *See Jones v. United States*, 9 F. Supp. 2d 1154, 1160-61 (separately analyzing government's position with respect to (1) first liability trial; (2) second liability trial; (3) economic damages; (4) emotional distress damages; and, (5) punitive damages), *aff'd by Jones v. United States*, 207 F.3d 508, 513 (8th Cir. 2000).

27

The district court, however, failed to make any determination as to whether the Government was substantially justified in its position on actual damages. Instead, the district court focused entirely on the Government's position on NOM's request for punitive damages. (JA at 381.) Consequently, it is clear the district court failed to apply the governing law to a significant issue on which NOM prevailed. Such incomplete analysis is flawed and constitutes an abuse of discretion. *See Wilson*, 624 F.3d at 649 (district court abuses its discretion when it "acts arbitrarily" or "commits an error of law"). According to this Circuit, "[t]he district court must exercise its discretion within the applicable rules of law or equity." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citations and quotations omitted). The district court failed to do so. Instead, the court selectively applied the governing law to only a portion of the Government's legal positions. Focusing on the issue of actual damages—the Government's position that NOM was not entitled to *any* actual damages—a court would be hard pressed to find that the Government's position was substantially justified.

### B. The District Court Abused Its Discretion in Finding the Government's Position Substantially Justified.

As NOM has previously stated, the Government refused even to acknowledge that it illegally disclosed NOM's tax return information—or to identify the source of the disclosure—let alone acknowledge that it may be liable for NOM's actual damages. In its Answer, the Government finally admitted that it

28

negligently disclosed NOM's unredacted 2008 Schedule B to a third party in violation of 26 U.S.C. § 6103. (JA at 49-50 ¶ 78.)[8] Despite that admission, the Government took the position that it was not responsible for *any* of the actual damages sustained by NOM as a result of the disclosure, including legal expenses incurred during NOM's investigation into the source of the disclosure. (JA at 55 ¶¶ 123-25.) That position, in light of "the facts . . . available at the time the IRS took it," was substantially unjustified. *Estate of Baird*, 416 F.3d at 447.

More than a year prior to the filing of this action, the Government conducted an extensive investigation into the circumstances of the unlawful disclosure of NOM's 2008 Schedule B. (*See* JA at 85 ¶ 21; JA at 214-15.) That investigation informed the Government of the following points that the Government asserted as facts in this litigation:

- IRS clerk Wendy Peters disclosed an unredacted copy of NOM's Amended 2008 Schedule B to Matthew Meisel around February of 2011. The unlawful disclosure was made allegedly in response to a request by Meisel using IRS Form 4506-A. (*See* JA at 319-20.)

- When Meisel made the request, he allegedly noted on the form that he was a member of the media and that he intended to use NOM's tax returns for an Internet blog. (*Id.*; Docket Entry 68-4 at 1.)

---

[8]    Notably, although the IRS claims that it admitted negligence in its Answer, it actually denied the allegations in the preceding sentence. (JA at 52 ¶¶ 102-03.) In fact, the Government repeatedly referred to its actions as "inadvertent," up to and throughout its summary judgment motion. (*See* JA at 79-81, 86, 93-95, 98, 101-05.)

29

- In March 2012, Meisel sent a copy of NOM's unredacted Amended 2008 Schedule B to the Human Rights Campaign ("HRC"), who posted it on its website and shared it with the Huffington Post, who also posted it on its website. (JA at 321; JA at 84-85 ¶¶ 19-20.)

Consequently, when this action was filed, the Government knew that the IRS was the originating source of the document posted on the Internet by HRC and the Huffington Post.

Further, in June of 2012, NOM informed TIGTA, by letter, that Fred Karger had filed a complaint (and a supplemental complaint) with California's Fair Political Practices Commission ("FPPC"), which was predicated on and included a copy of NOM's Amended 2008 Schedule B. (JA at 277-316.) NOM explained to TIGTA that the FPPC had refused NOM's request to destroy the 2008 Schedule B. (Docket Entry 76-1 at 48-49.) As this Court recognized, Karger's complaints "were based, at least in part, on information garnered from NOM's Schedule B. Indeed, his original complaint contained screen shots of NOM's Schedule B, as published by the HRC." (JA at 322.)

Therefore, at the time the Government took the position that it was not responsible for any of NOM's actual damages, it knew that the person who received NOM's unredacted tax return from the IRS claimed to be a member of the media who intended to publish NOM's tax information on his Internet blog. The Government also knew that the IRS was the original source of the document posted by HRC and Huffington Post and the document attached to the complaint filed by

30

Fred Karger with the FPPC. Moreover, the Government knew that NOM's claimed actual damages included legal expenses incurred by NOM in order to investigate the disclosure caused by the IRS and to prevent HRC, Huffington Post, Fred Karger and the FPPC from possessing and further publicizing NOM's confidential donor information. (JA at 322 ("NOM hired legal counsel to protect the confidential donor information disclosed by Karger, and ultimately NOM was absolved of any wrongdoing.").) Despite having this knowledge, the Government offered NOM only $1,000 in statutory damages, (JA at 54-55 ¶ 121), and wholly denied that NOM's claimed actual damages were "sustained . . . as a result of [the] unauthorized . . . disclosure," 26 U.S.C. § 7431(c)(1)(B)(i), made by IRS clerk Wendy Peters, (JA at 101; *see also* JA at 55 ¶¶ 123, 125.)

The Government maintained its position regarding actual damages throughout discovery and presented it to the district court in its motion for summary judgment motion. (JA at 101-07.) The district court's resolution of the Government's arguments reveals its unreasonableness, and hence its lack of substantial justification. Indeed, the district court rejected all of the Government's arguments concerning actual damages, explaining, "The Government's position that it is not responsible, as a matter of law, for the costs associated with the subsequent misuse of NOM's confidential taxpayer information is *untenable* on the facts presented." (JA at 347 (emphasis added).) The district court had "*little*

31

*trouble* concluding that the unlawful disclosure of NOM's Schedule B was the actual cause of its claimed damages." (JA at 342 (emphasis added)); *see also Paisley*, 957 F.2d at 1168. While the issue of proximate cause was "a closer call," the district court found that the Government's position was legally unsustainable, explaining that it was "*certainly foreseeable* that releasing NOM's Schedule B to a member of the media could result in its publication, and that NOM would take legal action to prevent further harm." (JA at 345) (emphasis added).)

This district court's analysis stands in stark contrast to that in *Paisley*, where this Court held that the Government's position was "substantially justified" despite being rejected by Supreme Court. That was because the issue was "sufficiently difficult" and "prompted two separate, fairly lengthy, opinions, each of which demonstrates a perception by the author that the issue was one whose resolution required significant intellectual effort, careful analysis of relevant interpretive sources, and sophisticated applications of traditional canons of statutory construction." *Paisley*, 957 F.2d at 1168. Here, the district court rejected the Government's position with relative ease and had little difficulty resolving the issue of actual damages in NOM's favor.

According to the district court's analysis, the Government's position with respect to actual damages did not have a "reasonable basis both in law and fact." *Pierce*, 487 U.S. at 565. Based on the facts known to the Government prior to the

32

summary judgment motion, the Government should have known its position on actual damages was untenable. It was therefore not substantially justified. *Mallas*, 876 F. Supp. at 89 (where the court "rejected all the arguments presented by the Government" and it was "clear that the Government disclosed return information in violation of the statute," the Government's "position was not substantially justified.").

The lack of substantial justification for the Government's position is reinforced by "the views of other courts on the strength . . . of the Government's position" *Paisley*, 957 F.2d at 1166, that is, existing precedent in which the Government lost on substantially similar issues, *see Jones v. United States*, 9 F. Supp. 2d 1119. While the Court is only mandated by statute to consider losses on substantially similar issues in "courts of appeals for other circuits," 26 U.S.C. § 7430(c)(4)(B)(iii), *Jones v. United States* nevertheless demonstrates that the Government should have known its position was substantially unjustified prior to filing its motion for summary judgment. *Cf. Snider v. United States*, 468 F.3d 500, 511 (8th Cir. 2006) (affirming a district court holding that the government's position was not substantially justified where, after close of discovery, "the government should have realized . . . [its] position was not substantially justified").

As the district court explained, *Jones* "illustrates the general position . . . that misuse of taxpayer information by third parties is 'one of the kind of

33

consequences' of an unauthorized disclosure 'which might reasonably be foreseen.'" (JA at 346 (*quoting Jones*, 9 F. Supp. at 1144).) *Jones* further illustrates that the Government's position in this case—that it was not responsible for damages sustained as a result of misuse of NOM's 2008 Schedule B by third parties—was not substantially justified.

Only after the district court's decision on the Government's motion for summary judgment did the Government accept *NOM's* offer to settle the issue of actual damages for $50,000, more than 85% of the amount in controversy. *Paisley*, 957 F.2d at 1166 ("terms of the settlement agreement that ended the underlying litigation" is probative of strength of Government's position). *See also Hanson v. Comm'r*, 975 F.2d 1150, 1156 (5th Cir. 1992) ("[T]he government's concession of [the] case is one factor to be considered when the trial court decides whether the government's overall position was substantially justified."); *Envtl. Def. Fund, Inc. v. Watt*, 722 F.2d 1081, 1085-86 (2d Cir. 1983) (stating that under the Equal Access to Justice Act, "the government's ultimate acquiescence in a settlement" is part of the substantial justification inquiry and that "[t]he government may lack substantial justification for its position even though it does not insist upon an unreasonable stance through to the resolution of a case"). Although "[t]he unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government's

34

position," *Pierce*, 487 U.S. at 568 (emphasis added), the "reasons for settlement" here are plainly obvious: this Court rejected the Government's position with respect to causation and actual damages. The Government's willingness to settle on unfavorable terms after its argument was rejected thus provides further evidence that its position was not substantially justified.

### Conclusion

For the foregoing reasons, NOM is a "prevailing party," and is entitled to reasonable attorneys' fees. The judgment to the contrary by the district court should be reversed, and the district court directed to consider NOM's reasonable attorneys' fees request.

Dated: March 4, 2015

Respectfully submitted,

 /s/ Kaylan L. Phillips
William E. Davis, of counsel
(D.C. 280057)
Kaylan L. Phillips (D.C. 1110583)
Noel H. Johnson (Wisc. 1068004)
Joseph A. Vanderhulst (Ind. 28106-02)
ACTRIGHT LEGAL FOUNDATION
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
wdavis@foley.com
kphillips@actrightlegal.org
njohnson@actrightlegal.org
jvanderhulst@actrightlegal.org

John C. Eastman (Cal. 193726)
Center for Constitutional Jurisprudence
c/o Chapman Univ. School of Law
One University Drive
Orange, CA 92866
(877) 855-3330 x2 (telephone)
(714) 844-4817 (fax)
jeastman@chapman.edu
*Counsel for Appellant*

Jason Torchinsky (Va. 47481)
Shawn Toomey Sheehy (Va. 82630)
Holtzman Vogel Josefiak, PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
(540) 341-8808 (telephone)
(540) 341-8809 (fax)
jtorchinsky@hvjlaw.com
ssheehy@hvjlaw.com
*Counsel for Appellant*

## Statement with Respect to Oral Argument

Pursuant to Federal Rule of Appellate Procedure 34(a), Appellant, by counsel, requests oral argument on this case. Appellant states that this case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided, and (c) as described in the accompanying memorandum, the decisional process would be significantly aided by oral argument given the review required by the specific facts in this case.

Dated: March 4, 2015                    /s/  Kaylan L. Phillips

Kaylan L. Phillips
ACTRIGHT LEGAL FOUNDATION
209 West Main Street
Plainfield, IN 46168
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
kphillips@actrightlegal.org
*Counsel for Appellant*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14-2363     **Caption:** National Organization for Marriage, Inc. v. United States ⊞

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]   this brief contains _____8,277_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]   this brief has been prepared in a proportionally spaced typeface using
Microsoft Word 2010_____ [*identify word processing program*] in
14-point, Times New Roman_____ [*identify font size and type style*]; **or**

[ ]   this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Kaylan L. Phillips_____

Attorney for Appellant_____

Dated: 3/4/2015_____

38

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on March 4, 2015. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: March 4, 2015                              /s/  Kaylan L. Phillips
                                                  Kaylan L. Phillips
                                                  ACTRIGHT LEGAL FOUNDATION
                                                  209 West Main Street
                                                  Plainfield, IN 46168
                                                  (317) 203-5599 (telephone)
                                                  (888) 815-5641 (fax)
                                                  kphillips@actrightlegal.org
                                                  *Counsel for Appellant*

# Addendum

**26 U.S. Code § 7430 -** Awarding of costs and certain fees

(c) Definitions

(4) Prevailing party
(A) In general
The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved)—

   (i)    which—
   (I)    has substantially prevailed with respect to the amount in controversy, or
   (II)   has substantially prevailed with respect to the most significant issue or set of issues presented, and
   (ii)   which meets the requirements of the 1st sentence of section 2412 (d)(1)(B) of title 28, United States Code (as in effect on October 22, 1986) except to the extent differing procedures are established by rule of court and meets the requirements of section 2412(d)(2)(B) of such title 28 (as so in effect).

(B) Exception if United States establishes that its position was substantially justified

   (i) General rule A party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceeding was substantially justified.

   (ii) Presumption of no justification if Internal Revenue Service did not follow certain published guidance For purposes of clause (i), the position of the United States shall be presumed not to be substantially justified if the Internal Revenue Service did not follow its applicable published guidance in the administrative proceeding. Such presumption may be rebutted.

   (iii) Effect of losing on substantially similar issues In determining for purposes of clause (i) whether the position of the United States was substantially justified, the court shall take into account whether the United States has lost in courts of appeal for other circuits on substantially similar issues.

   (iv) Applicable published guidance For purposes of clause (ii), the term "applicable published guidance" means—

      (I)    regulations, revenue rulings, revenue procedures, information releases, notices, and announcements, and
      (II)   any of the following which are issued to the taxpayer: private letter rulings, technical advice memoranda, and determination letters.

1

(C) Determination as to prevailing party

Any determination under this paragraph as to whether a party is a prevailing party shall be made by agreement of the parties or—

  (i)  in the case where the final determination with respect to the tax, interest, or penalty is made at the administrative level, by the Internal Revenue Service, or

  (ii)  in the case where such final determination is made by a court, the court.

(D) Special rules for applying net worth requirement

In applying the requirements of section 2412 (d)(2)(B) of title 28, United States Code, for purposes of subparagraph (A)(ii) of this paragraph—

  (i) the net worth limitation in clause (i) of such section shall apply to—

    (I)  an estate but shall be determined as of the date of the decedent's death, and

    (II)  a trust but shall be determined as of the last day of the taxable year involved in the proceeding, and

  (ii)  individuals filing a joint return shall be treated as separate individuals for purposes of clause (i) of such section.

_____

**26 U.S. Code § 7431** - Civil damages for unauthorized inspection or disclosure of returns and return information

(c) Damages

In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—

  (1)  the greater of—

    (A)  $1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or

    (B)  the sum of—

      (i)  the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus

      (ii)  in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages, plus

  (2)  the costs of the action, plus

(3)     in the case of a plaintiff which is described in section 7430 (c)(4)(A)(ii), reasonable attorneys fees, except that if the defendant is the United States, reasonable attorneys fees may be awarded only if the plaintiff is the prevailing party (as determined under section 7430 (c)(4)).